Staples. J.
No rule of law is better settled than that one partner is not entitled to compensation for his services while employed in the partnership business, unless it be so agreed between the parties. The doctrine is thus laid down by a writer of acknowledged merit: “As it is the duty of each partner to devote himself to the interests of the concern, to exercise due diligence and skill for the promotion of the common benefit, it follows that he must do it without any reward or compensation, unless there is an express stipulation to that effect. And there is no difference in this respect, though the duties performed by the partners have been very unequal in value and amount.” Collyer on Partnership, sec. 183. See also Strong on Partnership, sec. 182; Parsons on Partnership. page 130. In Franklin v. Robinson, 1 John. Ch. R. 157, Chancellor Kent said he knew of no case *which entitles one partner to charge for his services except upon the ground of special agreement. In Philips v. Turner. 2 Dev. & Battle Eq. R., at page 123, it appeared that one of the partners had taken the almost entire and exclusive charge and superintendence of the business of the firm, and yet it was held that his claim for compensation could not be _ allowed. The numerous cases on this subject may be found in the works already referred to, and need not be here cited. See also Patton’s ex’ors v. Calhoun’s ex’ors, 4 Gratt. 138. The reasons for this rule, as stated by the commentators and judges, are, first, each partner in taking care of the joint property is in fact taking care of his own interest, and is but performing his own duties and obligations growing out of the partnership. These duties and obligations are supposed to enter into and constitute a part of the consideration for others to engage in the business with him. The partners are considered as meeting on a common ground, each engaging to do all he can do for the common good.
In the second place the law cannot undertake to measure and settle between the partners the relative value of their various and unequal services bestowed on the joint business; and for the obvious reason it is impossible to see how far the relative experience. skill, ability or even known character and reputation of each entered as ingredients in the adjustment of the terms of the partnership. If a partner is unwilling to perform very unequal service without reward, he ought to stipulate that it shall be allowed him. In the absence of such stipulation, it must be presumed he is willing to render the service without remuneration. Parties assuming this relation to each other are supposed to know the law and to intend to be governed by it, unless they agree to be bound by some other rule.
When the nature of the partnership is of a * character to require the attention of all the partners, and one of them voluntarily withdraws himself from the business, refusing to give it any attention, throwing the entire burden upon his co-partner, such misconduct might be good ground to put an end to the partnership; but it confers upon the active partner no right to compensation for services in the line of his duties and obligations. If one partner, because he is the sole manager of the concern, is thereby entitled to be paid, another partner simply contributing more than his share of skill and labor, must have equal claim to be compensated for the excess.
It is a mere question of degree. So soon as the courts undertake, upon a mere, estimate of a partner’s services, to award compensation in one case, they must do so in all cases where the skill and labor and diligence are unequally bestowed. This would be simply to abolish the rule of law, and to place the right to compensation not upon contract, but upon the principle of quantum meruit.
The learned counsel for the appellant has cited the case of Bradford v. Kimberly, 3 John. Ch. R., p. 431, in which it was held that where several joint owners of a cargo appoint two of the part owners their agents to receive and sell the cargo and distribute the proceeds, these latter are entitled under1 such special agency to a commission or compensation for their services as factors or agents, in the same manner as a stranger. The ground upon which this decision was based is. that this special agency was altogether distinct from their ordinary powers of part owners, and the persons so appointed were to be considered, for this purpose, as agents of the company. In such case a compensation is necessarily and equitably ím- *384 plied in and by virtue of the special agreement. It is obvious that this principle has no .application where *there is no special agreement, and where the services performed by a partner are not distinct from, but directly within the line of his ordinary _ duties. It will be found, upon examination, that the doctrine of nearly all the cases is, that compensation can only be allowed where there is an express agreement to that effect, or one necessarily to be implied from the conduct of the parties.
We are next to inquire whether the appellant, consistently with this rule of law, is entitled tó compensation for the services rendered by him during the existence of the partnership between him and his brother Daniel Forrer. It is in proof, and indeed it is conceded, that there was no express contract to that effect; and it is equally clear that there is no fact or circumstance from which such a contract may be inferred. The appellant’s claim rests- solely upon the ground that he rendered very valuable services to the concern, without interruption, through a long series of years, while his co-partner, Daniel Forrer, rendered none. The testimony very clearly establishes that the latter, in the year 1844, left the “Shenandoah Iron Works,” and removed to his farm in Augusta county, and that the only assistance he rendered was occasionally to give some attention to the financial business of the concern, and to aid in the beginning of each year in hiring the laborers needed on the works. On the other hand, it is but just to say that the appellant remained at the place of business, devoting himself with fidelity and energy to all his duties. By his efforts a large quantity of real estate was acquired, new furnaces and forges constructed, several new buildings erected, and the property greatly improved in value, and finally sold in 1865 at an unprecedented price. All this is conceded, and yet it does not tend in the slightest degree to prove an agreement for compensation, or even a fact from which an agreement may be implied. The same *may be said of hundreds of partners all over the country, who have voluntarily devoted all their time, energy and skill to the common benefit without contract. and therefore without compensation.
When it is conceded that the partnership property was greatly improved by the appellant, it must be borne in mind also that very heavy losses were sustained during the period of his supervision and control. There were large losses by fire, and losses by the insolvency of those to whom he had given credit, to the amount of nearly one hundred thousand dollars. It may be that they were unavoidable: it is impossible to say. The appellant having in 1868 obtained a release from the appellee which would cover any liability on this- score, these matters could not be investigated in the present case. It is in proof also, that at the close of the partnership in 1865. the liabilities of the concern amounted to more than eighty thousand dollars. It was only saved from utter bankruptcy by the extraordinary sale in 1865. If Daniel Forrer, under these circumstances, had been called on to agree that the appellant should have compensation, it is almost certain he would have refused it. He had no confidence in the business; he wished to sell the property and pay the debts; and only consented to a continuance of the partnership in deference to the wishes of the appellant. _ The result would have indicated his sagacity, but for the war, which enabled the appellant to pay off a large indebtedness in a depreciated currency, and indirectly paved the way for the sale of the property.
The appellant not only did not prefer any such claim as he now asserts, but it does not appear he ever intimated to his brother his purpose to do so during the existence of the partnership. Having charge of the books, he never, during all the various years of his *supervision, put upon record any charge for his services, or even a line or word to that effect.
In 1868, after the death of Daniel Forrer, the appellant had a settlement with the ap-pellees. In that settlement he admitted a liability to the estate of his brother of $62,395, on account of the partnership assets. As a condition of such admission on his part he required of the appellees a full acquittal and release of all claims or demands against him on account.of his management of the iron works. If the appellant then believed he had a valid claim for compensation, it is natural to suppose he would have presented it as a set-off, in part at least, against this liability. If it was his intention to insist upon it, good faith required he should make it known while demanding the acquittance from the appellees. It seems, however, that he did not even mention the claim. Had he done so, had he then said he had an account of more than fifty thousand dollars, I think it is very clear he would never have gotten the release given him by the appellees. It was not until two years or more afterwards and five years after the dissolution of the partnership, that this claim was asserted. Under all these circumstances I think there is nothing in this case to take it out of the operation of the general rule which denies compensation to a partner for services unless under a special agreement.
The next question for our consideration grows out of the purchase made by the appellant from the heirs of John Jameson. Are the appellees entitled to the benefit of that purchase upon contributing their just share of the expense incured? The deed executed by the heirs of Mathew Jameson and James Jame-son, on the 18th December, 1859, to the appellant and Daniel Forrer, was a conveyance of the entire tract of one hundred and fifty acres known as the “Ore Bank.” The grantors *no doubt imagined their title to be valid, as they conveyed with general warranty. The appellant and Daniel Forrer supposed they were purchasing the entire tract; they took possession of the whole, and held that possession continuously adversely, from the date of their purchase, in 1859, until after the institution of this suit. They were joint tenants of the entire tract, with a perfect title to two-thirds, and a defective *385 but colorable title to the other third. What is the principle governing such a relation? Nothing is better settled than the rule in such cases. Whenever two or more persons having a community of interest hold an imperfect title and one of them buys in an outstanding title, such purchase will enure to the common benefit upon contribution made to repay the purchase money. This rule is based upon the community of interest in a common title, creating such a relation of trust and confidence between the parties that it would be inequitable to permit one of them to do anything to the prejudice of the other in reference to the common property. Bothwell v. Dewees, 2 Black, U. S. R. 613; Buchanan v. King’s heirs, 22 Gratt. 414. This principle equally applies to joint tenants, tenants in common, co-partners and all others having a common title and interest.
The appellant, in the attempt to purchase the one-third held by the heirs of John Jameson, violated this rule of law, and he violated his duties and obligations to his co-tenants. So soon as the purchase was made it enured to their benefit, jointly with him, and no arrangement or contrivance of his could deprive them of the right, if they so elected, to participate in the acquisition.
It is very true if the appellant and Daniel Dorrer had purchased and claimed but two-thirds of the land, the other third being in the heirs of John Jameson, the appellant might have acquired that third for his own ’^exclusive benefit. The reason is plain. In such case there is no identity of interest as to the third; it is not common property, and of course involves none of the relations of trust and confidence growing out of a community of interest. That is not this case. As has been seen, the appellant and Daniel Dorrer purchased and claimed title to the whole, and not a part of the tract, and neither of them could do any act to the prejudice of the other’s title to the whole or any part" of it.
If there was the si a (low of a doubt as to the just application of the general rules of law in this case, that doubt will be removed by the facts connected with the appellant’s purchase. The aprellant heard of the defect in the title through the counsel of the appel-lees. They disclosed it to him only because he was jointly interested with others in the property. But for that interest he would never have known of the defect. And this knowledge, thus obtained, he has sought to use as a means of destroying the rights r his co-tenants, and of appropriating the joint property to his own individual use. When the qro'+ion of the defect in the title was under c nsidcration, the parties with their counsel had repeated consultations on the subject, the appellant being generally present. By the advice of appellees’ counsel, it was finally determined to employ an a ¡rent to hunt for the heirs of John Jameson, and buy in their title. The agent was selected and sent upon his mission. After a long and laborious search he learned the names and residences of these heirs.
No sooner was this information obtained, than the appellant took the agent into his confidence, entered into a secret arrangement with him to buy in the title for the exclusive benefit of the appellant, and take the deeds in his name. All this was carefully concealed from the appellees and their counsel. The first intimation they *had of the fact was derived from the deeds put on the record by the appellant. Such conduct cannot be justified in any forum of law or morals. It is utterly indefensible. The explanation given by the appellant of the reasons inducing him to take these deeds to himself, does not very much help the matter. But whatever may have been his motives, he can derive no sort of advantage from the purchase to the exclusion of his co-tenants. All that he can ask is, that they shall contribute their due proportion of the expense incurred by him.
Upon the whole; I think there is no error in the decree of the circuit court, and the j same must be affirmed.
The other judges concurred in the opinion of Staples, J.
Decree affirmed.